IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAMON BOYCE, et al.,

        Plaintiffs,

   v.

CITY HALL FOR SPRINGFIELD,
OHIO, et al.,

        Defendants.

:

:

:

:

Case No. 3:19-cv-181

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS DERIC
NICHOLS AND BRIAN PEABODY'S MOTION FOR SUMMARY
JUDGMENT (DOC. #38) AND OBJECTION TO PLAINTIFF'S
UNAUTHENTICATED EXHIBITS (DOC. #46); TERMINATION ENTRY

---

Before the Court is a Motion for Summary Judgment filed by Defendants Deric Nichols ("Nichols") and Brian Peabody ("Peabody") (collectively "Defendants"). Doc. #38. *Pro se* Plaintiff, Ramon Boyce ("Plaintiff" or "Boyce"), has filed a Response, Doc. #43, Exhibits in Support, Doc. #44, and a Narrative Index to Exhibits. Doc. #45. Defendants have filed a Reply, Doc.#47, and an Objection to Plaintiff's Unauthenticated Exhibits. Doc. #46. For the reasons set forth below, Defendants' Motion for Summary Judgment, Doc. #38, and Objection to Plaintiff's Unauthenticated Exhibits, Doc. #46, are sustained.

**I. Defendants' Objection to Plaintiff's Unauthenticated Exhibits, Doc. #46**

In support of his Response to Defendants' Motion for Summary Judgment, Doc. #46, *pro se* Plaintiff filed several Exhibits in Support. Doc. #44. Defendants have filed an Objection, pursuant to Fed. R. Civ. P. 56(c)(2), to three of these exhibits asserting that they are unauthenticated. The three exhibits are identified by Plaintiff as follows: (1) Exhibit D, a "Transcript of Proceedings" from a suppression hearing in the Common Pleas Court of Clark County, Ohio; *Id.*, PageID##465-478; (2) Exhibit G, Plaintiff's public records request to the Springfield Police Division and its response to the request; *Id.*, PageID##487-488; and (3) Exhibit H, approximately 100 pages of excerpts from a transcript from a proceeding in a Clark County, Ohio court. *Id.*, PageID##489-514.

Fed. R. Civ. P. 56(c)(2) permits a party to object to material cited to support or dispute a fact on the basis that it cannot be presented in a form that would be admissible in evidence. The Advisory Committee Notes to the 2020 Amendment to Rule 56 state that if an objection is made, the burden is on the proponent to show that the material is admissible as presented or explain the admissible form that is anticipated.

Boyce has filed no response to Defendants' Objection.

Defendants' Objection to Exhibits D, Doc. #44, PageID##465-478, and H, Doc. #44, PageID##489-514, is sustained since there is no cover sheet and no certification from the court reporter. *See Lyons v. Donahoe*, No. 3:14-cv-21, 2016 WL 1070856, at *7-8 (S.D. Ohio March 16, 2016) (Rice, J.) (deposition transcript

and transcripts of administrative hearing could not be considered due to lack of a cover sheet and reporter's certification of authenticity); *see also Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). The Court also sustains the objection to Exhibit G, Doc. #44, PageID##487-488, since these documents are not self-authenticating pursuant to Fed. R. Evid. 902Doc. 38-1, and are not authenticated by testimony from a person with knowledge as required by Fed. R. Evid 803(6).

For the reasons set forth above, Defendants Objection to Plaintiff's Unauthenticated Exhibits, Doc. #46 is sustained. The Court will not to consider Exhibits D, G and H, Doc. #44, PageID## ##465-478; 487-488; and 489-514 in ruling on Defendants' Motion for Summary Judgment. Doc. #38.

## II. Procedural and Factual Background

### A. Introduction

In May 2018, *pro se* Plaintiff was convicted by a jury in Clark County, Ohio, for crimes that included engaging in a pattern of corrupt activity, 18 counts of burglary and six counts of receiving stolen property. Doc.#38-1. He was sentenced to consecutive sentences totaling 70 years in prison. On July 2, 2020, the Second District Court of Appeals affirmed his conviction and on December 28, 2020, the Ohio Supreme Court declined jurisdiction. Boyce's appeal to the United States Supreme Court was denied on April 26, 2021. *State v. Boyce*, 2020-Ohio-3573, (Ohio Ct. App. 2d Dist. Clark County 2020), appeal not allowed, 160 Ohio St. 3d

3

1461, 2020-Ohio-5332, 157 N.E.3d 799 (2020) and appeal not allowed, 162 Ohio St. 3d 1412, 2021-Ohio-961, 165 N.E.3d 329 (2021) and cert. denied, 141 S. Ct. 2577 (2021).

On June 13, 2019, Boyce filed his lawsuit, Doc. #3, and on August 1, 2020, he filed a 21-page single-spaced Amended Complaint. Doc. #7. The Amended Complaint was signed by Boyce and three *pro se* Plaintiffs, asserting numerous state and federal claims against thirteen (13) Defendants.[1] On April 28, 2021, this Court issued a Decision and Entry Adopting in Part and Rejecting in Part the Report and Recommendations of United States Magistrate Judge, Doc. #20, and on July 8, 2021, the Court filed an Order terminating the three *pro se* Plaintiffs as parties and dismissing their claims with prejudice. Doc. #21.

As a result of these two rulings, all 13 (thirteen) Defendants were dismissed from this case in their official capacities and 11 (eleven) of the Defendants were dismissed in their individual capacities. Only Nichols, a uniformed K-9 patrol officer for the Springfield Police Department and Peabody, a supervisor in the

---

[1] Defendants included the following: (1) City Hall for Springfield, Ohio; (2) Clark County Prosecutor David Andrew Wilson (sued in his official and individual capacities); (3) Springfield City Police Department; (4) former Springfield Chief of Police Stephen Moody (sued in his official capacity); (5) current Springfield Chief of Police Lee Graf (sued in his official capacity); (6) Springfield police officer Deric Nichols (sued in his official and individual capacities); (7) Springfield police officer Ronald Terry (sued in his official and individual capacities); (8) Springfield police officer Michael Curtis (sued in his official and individual capacities); (9) Springfield police officer Brian Peabody (sued in his official and individual capacities); ( 10) Clark County Sheriff's Department (sued in its official and individual capacities); ( 11) Clark County Sheriff Deborah Burchett (sued in her official and individual capacities); ( 12) Clark County Sheriff's Deputy Ronny Fader (sued in his official and individual capacities); and (13) Clark County Sheriff's Deputy Brian Melchi (sued in his official and individual capacities).

Department's property crimes unit, remain as Defendants in their individual capacities. Plaintiff has alleged a claim pursuant to 42 U.S.C. § 1983 against each Defendant as a result of two different traffic stops. Specifically, Plaintiff has alleged that Nichols's February 28, 2017, traffic stop, and Peabody's June 21, 2017, traffic stop violated the Fourth Amendment.

### B. Nichols's Stop of Plaintiff on February 28, 2017

At approximately 7:30 p.m. on February 28, 2017, Nichols, a 15-year veteran of the Springfield, Ohio, Police Division, and police canine, "Gery," a well-trained narcotics police dog, were on a routine patrol in Springfield, Ohio. Doc. #38-2, PageID#354-355. Nichols stopped his marked police cruiser in a right turn only lane at a traffic light in the city of Springfield. He observed in front of his police cruiser a black BMW. *Id.*, PageID#355. When the light turned green, the BMW did not turn right but instead proceeded straight from the turn only lane. Doc. #43, PageID#428. Nichols activated the overhead lights on the cruiser, pulled the BMW over, ran the license plate through the Law Enforcement Automated Database System (LEADS) and saw that the vehicle was registered to Boyce. Doc. #38-2, PageID#355. Nichols knew that Boyce was a suspect in a string of local burglaries. *Id.* He then got out of his vehicle, approached the BMW, took the driver's license from Boyce, returned to his vehicle and because warrants are not always timely entered into the LEADS system, contacted Dispatch to check for any current "hard" copies of outstanding warrants for Plaintiff that may not be entered into

5

the LEADS system. Doc. #38-2 PageID##356-357. Shortly thereafter, Springfield Police Officers Meredith Freeman, Michael Casey and Sergeant Jeffrey Williams arrived. Doc. #38-2 PageID##356. At the request of one of the officers, Plaintiff exited the BMW, and agreed to a search of his person, however, he refused to consent to a search of his vehicle. *Id*. Because there was no consent by Plaintiff to a vehicle search, Nichols, who had Gery on a leash, ordered the canine to do a "free air sniff" around the outside of the BMW. Gery indicated to Nichols the presence of narcotics by pawing at the driver's door. *Id*., PageID#356. Based on the reaction of the police canine, Officer Freeman and Nichols conducted a search of the BMW and opened the trunk. *Id*.

Marijuana was found in a plastic panel on the floor of the trunk, along with loose diamonds, broken cell phones, an SD card[2], a bag and an envelope of cash. *Id*. Plaintiff was placed under arrest and the rest of the BMW was searched which disclosed more broken cell phones, a digital scale and a precious metal testing kit. *Id*. The dash cam footage showed less than seven minutes between Nichols's initial stop of Boyce and the canine officer's 's positive indication of narcotics. Doc. #38-2, PageID#362.

_____

[2] A SD card is used to store video and image files.

6

### C. Peabody's Attempted Stop of Plaintiff on June 21, 2017

On June 21, 2017, Peabody was a sergeant and the supervisor in the property crimes unit of the Springfield, Ohio, Police Division. Doc. #38-3, PageID#372. His unit supervised detectives who investigated burglaries, thefts, receipt of stolen property and other property crimes in Springfield, Ohio. *Id.*

In 2016-2017, a series of burglaries occurred in Springfield, Ohio. Peabody knew that Plaintiff had been released from prison in early 2016 after serving a sentence for a home burglary in Springfield. Because the recent burglaries occurred in the same general area and with the same modus operandi as Plaintiff's earlier burglary conviction, Peabody considered Plaintiff a suspect for these burglaries. *Id.* Peabody was also aware that the Clark County, Ohio, Sheriff's Department considered Plaintiff a suspect in burglaries being investigated by them. As a result of this information, Peabody's property crimes unit worked with the Clark County Sheriff's Department and later with the Columbus, Ohio, Police Department, since property stolen from the Springfield homes began appearing in pawn shops located in Columbus, Ohio. *Id.* A warrant was obtained by the Clark County Sherriff's Office to place a GPS tracking device on Plaintiff's Chrysler 300 which permitted Peabody to receive text alerts on his cell phone on the vehicle's location. *Id.*

On June 21, 2017, at approximately 1:45 a.m., Peabody received an alert that Plaintiff's vehicle was in an area in Springfield, Ohio, where some recent home burglaries had occurred. *Id.* Peabody arrived at the location in an unmarked

7

police cruiser and observed Plaintiff and another individual in a Chrysler 300.  He

activated his police lights on his unmarked police cruiser and instructed Plaintiff to

exit the vehicle.  Plaintiff refused and although Peabody attempted to "box-in"

Plaintiff's vehicle, he was unable to do so.  *Id.*, PageID#374.  A vehicle chase

followed and at approximately 4:51 a.m., Peabody received an alert on the

location of Plaintiff's vehicle which was abandoned in a Springfield, Ohio, alley.

Peabody became aware of a report made to the Springfield Police Department

that two men had attempted to enter a nearby Springfield home. *Id.* A police

search of the area resulted in the recovery of Plaintiff's cell phone in a yard. *Id.*

Although Plaintiff was not found on June 21, 2017, his abandoned vehicle

was impounded, his cell phone processed and on June 28, 2017, a search warrant

was issued by the Common Pleas Court of Clark County, Ohio, which permitted

the Springfield police officers to search Plaintiff's car and cell phone.  *Id.*

Following these searches and the collection of evidence, Plaintiff was arrested and

indicted for the burglaries that occurred in Clark County.

### D. Plaintiff's Convictions

The evidence collected as a result of Nichols's February 28, 2017, stop was

used in the prosecution of Plaintiff in a marijuana trafficking case in the Clark

County Municipal Court, *State of Ohio v. Ramon Andrew Boyce*, Case Nos.

17CRB782 and 17TRD2462, Doc. #38-4, PageID##389-390.  This same evidence was

used in Plaintiff's felony burglary case in the Clark County Court of Common

Pleas, *State of Ohio v. Ramon Boyce*, Case No. 17-CR-761A. Doc. #38-5, PageID##391-395. Although Plaintiff filed a motion to suppress this evidence in both cases, asserting that the "stop and subsequent search violated his constitutional rights guaranteed by the Fourth Amendment." Doc. #38-5, PageID#391, each motion was denied. Doc. ##38-4 and 38-5.

Following Plaintiff's May 2018, conviction in the Common Pleas Court of Clark County, Ohio and the imposition of a 70-year prison sentence, Doc. #38-1, PageID ##306-307, he appealed to the Second District Court of Appeals. Doc. #38-1. The state appellate court overruled Plaintiff's challenges and held, among other things, that Nichols lawfully stopped Boyce for a traffic violation, the, search of Plaintiff's BMW was lawful, the free-air sniff did not unreasonably prolong the stop and the canine's pawing of the driver's door was sufficient probable cause for the subsequent search of the vehicle.

Plaintiff's appeal to the Second District Court of Appeals did not include Peabody's attempted stop of June 21, 2017, the later search of his Chrysler 300 and cell phone.[3]

## III. Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[3] Although the case was remanded to the trial court for the limited purpose of correcting an error in the sentencing entry, it was affirmed in all other relevant respects.

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## IV. Legal Analysis

### A. Introduction

Plaintiff asserts that his Fourth Amendment rights protecting against unreasonable searches and seizures were violated by (1) Nichols's February 28, 2017, traffic stop and the police canine's "free air sniff" and (2) Peabody's

attempted stop of him on June 21, 2017, and subsequent seizure and search of Plaintiff's abandoned Chrysler 300 and cell phone. He seeks damages pursuant to 42 U.S.C. § 1983. This statute '"is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred."' *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). To recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Defendants argue that there are no genuine issues of material fact and that they are each entitled to judgment as a matter of law. They assert that Plaintiff's claim against Nichols is barred by the statute of limitations and his claims against both Nichols and Peabody are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), *res judicata* and qualified immunity. Finally, they contend that the evidence submitted with their Motion for Summary Judgment is uncontroverted and shows that no Fourth Amendment violations occurred.

The Court will address each of Defendants' arguments and Plaintiffs' responses below.

### B. Plaintiff's § 1983 Claim for an Alleged Violation of the Fourth Amendment as to Defendant Nichols is Barred by the Statute of Limitations

It is well-established that in § 1983 cases "the statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984), and that the applicable statute of limitations is determined by state law. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985) (because § 1983 claims are essentially tort claims seeking recovery of damages, federal courts look to state law). Here, the two-year statute of limitations in Ohio Revised Code § 2305.10 applies. [4] The time period "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Ruiz-Bueno v. Maxim Healthcare Servs., Inc.*, 659 Fed. Appx. 830, 831 (6th Cir. 2016) (quoting *Cooey v. Strickland,* 479 F.3d 412, 416 (6th Cir. 2007)). In § 1983 cases, Courts determine when the cause of action accrues by looking at the event that "should have alerted the typical lay person to protect his or her rights." *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 856 (6th Cir. 2003).

Here, Nichols argues that the two-year statute of limitations began to run on the date of the stop, February 28, 2017, or at the latest, June 15, 2017, the date of the first suppression hearing in Clark County Municipal Court. Doc. #38-4.

---

[4] Ohio Revised Code § 2305.10, entitled "Product liability, bodily injury or injury to personal property; when certain causes of action arise" is, with some further exceptions for product liability, essentially a two-year statute of limitations for Ohio torts.

Plaintiff, however, argues that the two-year statute of limitations is equitably tolled until January 8, 2018, the date of the suppression hearing in the Common Pleas Court of Clark County. Doc. #38-5. He asserts that before that date, Nichols lied both in his incident report and in his municipal court testimony. Plaintiff argues that Nichols failed to admit that prior to stopping Plaintiff, he had already run a warrant check and learned that there were no outstanding warrants. Therefore, he contends Nichols had no reason to detain him further, allegedly run a second report and create the necessary time to have the police canine conduct a free-air sniff search which led to the search of the and car and discovery of evidence.

Attached to Defendants' Motion for Summary Judgment are several exhibits including a detailed affidavit of Nichols, Doc. #38-2, and a "call report" attached as an exhibit to the affidavit. Doc. #38-2, PageID#364. In his affidavit, Nichols states that before he pulled Plaintiff over on February 28, 2017, he performed a license plate check through LEADS ("Law Enforcement Automated Data System") and that after Plaintiff was stopped, Nichols obtained a copy of his driver's license and contacted the Springfield Police Department Dispatch to run a check for any warrants on Plaintiff that may have been filed but not yet in LEADS. Doc. #38-2, PageID#356-357. Nichols further stated in his affidavit that, to the best of his knowledge his testimony in the suppression hearings in the Clark County Municipal Court and in the Clark County Common Pleas Court is consistent with

14

his affidavit and that he did not state in the Clark County Municipal Court hearing that he had dispatch perform a warrant check before he stopped Plaintiff.

Plaintiff's evidence does not refute Nichols's affidavit or the information in the call report.

Based upon the evidence before the Court, there is no genuine dispute of material fact that Nichols testified on June 15, 2017, the date of the suppression hearing in the Clark County Municipal Court, and that he had dispatch perform a warrant check before stopping Plaintiff on February 28, 2017. Therefore, the two-year statute of limitations began to run on February 28, 2017, and expired on February 28, 2019. Accordingly, because the Complaint was not filed until June 14, 2019, there is no genuine dispute of material fact that Plaintiff's § 1983 claim asserting a violation by Defendant Nichols of his Fourth Amendment rights is barred as a matter of law by the statute of limitations. The Motion for Summary Judgment, Doc. # 38, as to Defendant Nichols is sustained as a matter of law.

### C. Plaintiff's § 1983 Claims for Defendants' Alleged Violations of the Fourth Amendment are Barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)

Defendants next argue that *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), bars Plaintiff's § 1983 action alleging an unconstitutional search and seizure.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-487.

Nichols and Peabody assert the record conclusively establishes that Plaintiff's only injury is his imprisonment, that his conviction has never been overturned and that as a result he has no claim for violation of his Fourth Amendment rights. *Hunt v. Michigan*, 482 F. App'x 20, 21-22 (6th Cir. 2012) (plaintiff's § 1983 claim alleging an illegal search implied the invalidity of his conviction and thus was barred by *Heck* ).

In response, Plaintiff cites the Court to *Harper v. Jackson*, 293 F. App'x 389 (6th Cir. 2008).  In that case, the Court held that *Heck* did not bar Harper's § 1983 Fourth Amendment claims because it concluded that the success of his claims would not necessarily imply that his conviction was unlawful due to the doctrine of inevitable discovery and the *Leon* good faith exception.[5] Plaintiff incorrectly argues that Harper limited the *Heck* bar of § 1983 Fourth Amendment claim to "only" those claims "where the contested search produced the only evidence supporting the conviction and no legal doctrine could save the evidence from exclusion." *Id.* at 392.   Although the *Heck* doctrine applies with some limitations in the Fourth Amendment context, importantly, the Sixth Circuit "places the onus on the district court to assess on a case-by-case basis whether a favorable Fourth

---

[5] *United States v. Leon*, 468 U.S. 897, 913, (1984) (adopting a "good faith" exception to the exclusionary rule where police seize evidence in reasonable reliance on a warrant issued by a neutral magistrate).

Amendment judgment would impugn the validity of an outstanding conviction."

*Harper*, 293 Fed. Appx. at 391-92.

Both Nichols and Peabody testified during Plaintiff's criminal trial in Clark

County Common Pleas Court concerning their interactions with Plaintiff. Nichols

testified that as a result of the canine fresh air search on February 28, 2017, the

Springfield police recovered drugs, cash and cell phones. Peabody testified that

he later found the Chrysler 300 and cell phone abandoned after his June 15, 2017,

attempted stop and that a warrant to conduct a search of the vehicle and cell

phone was later obtained. Unlike *Harper*,[6] there is no evidence before the Court

that the items recovered by Defendants would have inevitably been discovered

but for the allegedly unlawful actions of Nichols and Peabody.

Because *Harper* does not apply to the facts of this case, and because

Plaintiff's only injury is his imprisonment and his conviction has never been

overturned, he has no claim for violation of his Fourth Amendment rights under

*Heck*.

---

[6] The facts in *Harper* differ significantly from Plaintiff's case in several respects including the fact that Harper pled guilty to drug possession thereby eliminating the need for trial testimony. Based on this fact as well as others, the Sixth Circuit concluded that "[B]ecause we cannot say that Harper's convictions for drug possession would be impugned by concluding that the officers obtained the evidence illegally, we hold that *Heck* does not bar his Fourth Amendment claims. *Id.* at 390.

For these reasons, Plaintiff's § 1983 claims under the Fourth Amendment against Defendants are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). Accordingly, there is no genuine dispute of a material fact and Defendants' Motion for Summary Judgment, Doc. #38, is sustained as a matter of law.

### D. Plaintiff's § 1983 Claims for Defendants' Alleged Violations of the Fourth Amendment are Barred by *Res Judicata*

Defendants also argue that Plaintiff's claims against them are barred by the doctrine of *res judicata.* They assert that the record shows that Plaintiff lost two separate motions to suppress involving Nichols' February 28, 2017, search and seizure of his BMW in two separate courts and in his later appeal to the Second District Court of Appeals.  Additionally, they contend that the evidence before the Court also shows that Plaintiff failed to raise in his appeal to the state appellate court Peabody's June 15, 2017, attempted stop of the Chrysler 300. In response, Plaintiff again asserts that Nichols was untruthful in his testimony concerning the February 28, 2017, stop.

Because this is a § 1983 action, the Court looks to Ohio law to determine if Plaintiff is precluded under the theory of *res judicata* from raising his two separate Fourth Amendment violations.  *Haring v. Prosise*, 462 U.S. 306, 313 (1983), ("Section 28 U.S.C. § 1738 generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the

judgments emerged would do so,'" quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980));

In Ohio, "[t]he doctrine of *res judicata* encompasses the two related concepts of claim preclusion, also known as *res judicata* or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803, 806 (2007). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action" *id.*, and also "prevents litigation of those claims that could have been brought in the earlier suit." *Id.* "Issue preclusion, on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies" and "applies even if the causes of action differ." *Id.* Although Defendants argue that Ohio cites *5455 Clarkins Drive, Inc. v. Poole*, 384 F. App'x 458, 462-463 (6th Cir. 2010) in support of their *res judicata* argument, and argues that Plaintiff is precluded under Ohio law from raising and litigating any defense or claimed lack of due process that was raised or could have been raised in his/her state court criminal proceedings, Ohio does not always give preclusive effect to criminal judgments in civil or quasi-civil litigation. Instead, the courts consider "[t]he qualitative differences between civil and criminal proceedings including the differing standards of proof, rules of discovery, and rules of evidence." *Ferguson v. Ct. of Claims of Ohio, Victims of*

*Crime Div.*, 98 Ohio St.3d 399, 786 N.E.2d 43, 48 (2003) (*per curiam*) (internal

quotation marks and brackets omitted); *Anderson v. City of Blue Ash*, 798 F.3d 338

(6th Cir. 2015) (*res judicata* not applied where plaintiff's ADA and FHA claims in

civil case differed from municipal criminal court's fact finding procedures which

involved only a small fine, citation and lack of authority to order City to permit the

plaintiff to keep miniature horses on her property).

Here, however, Ohio courts would likely find that the principles of *res*

*judicata* apply. Plaintiff raised Nichols's alleged Fourth Amendment violations

during his criminal trial and lost his argument at both the trial and appellate court

levels and, for whatever reason, he failed to raise any Fourth Amendment

violation concerning Peabody's attempted stop.

Based on the evidence, the Court finds that the doctrine of res judicata

applies and bars Plaintiff's claims against Defendants. His Fourth Amendment

claims against Nichols were fully litigated in state court and he raised no such

claim against Peabody thereby waiving his right to do so. Accordingly, there is no

genuine dispute of material fact as to what the state courts considered, what they

did not consider because it was not presented to them and how it ruled.

Defendants' Motion for Summary Judgment based on the legal theory of *res*

*judicata*, Doc. #38, is sustained as a matter of law.

**E. Plaintiff's § 1983 Claims for Defendants' Alleged Violations of the Fourth Amendment are Barred by the Doctrine of Qualified Immunity**

Defendants next argue that even assuming Fourth Amendment violation occurred, they are entitled to qualified immunity. The doctrine of qualified immunity shields government officials from liability for civil damages for actions taken in the scope of their duties, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is immunity from suit as opposed to a defense to liability. *Pearson v. Callahan*, 555 U.S 223, 237 (2009). Because Defendants have raised it, Plaintiff bears the burden of rebutting it. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

To determine whether Nichols and Peabody are entitled to qualified immunity, the Court must consider: (1) whether, taken in the light most favorable to the plaintiff, "a constitutional right would have been violated on the facts alleged"; and (2) whether the right at issue was "clearly established." *Saucier,* 533 U.S. at 201. These questions need not be considered in order. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," Defendants are entitled to qualified immunity. If a "reasonable official in the position of the police officers could

conclude that the officers' conduct was lawful, then qualified immunity is warranted." *Bullman v. City of Detroit,* 787 Fed. App'x 290, 296 (6th Cir. 2019).

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Based on the evidence before the Court, Nichols February 28, 2017, stop and the subsequent search of the vehicle were not violations of the Fourth Amendment.

On February 28, 2017, Nichols's affidavit states he observed Plaintiff in a BMW stopped at an intersection in Springfield, Ohio, in a right turn only lane and that when the light changed to green, he proceeded straight ahead through the intersection. Plaintiff does not dispute this. Nichols, as a police officer, "may stop a vehicle that commits a traffic violation and look for evidence of a crime, even if the traffic stop is merely a pretext and they do not have an independent reasonable suspicion of criminal activity." *Hernandez v. Boles*, 949 F.3d 251, 257 (6th Cir. 2020). Thus, Defendant had probable cause for the stop and it was not a violation of the Fourth Amendment. Plaintiff was also ordered to get out of his vehicle, a "de minimis intrusion" and not a violation of the Fourth Amendment, *Marshall v. City of Farmington Hills*, 693 F.App'x 417, 422 (6th Cir. 2017), and the evidence is uncontroverted that the fresh air sniff search conducted by Gery, which later led to the interior search of the BMW, lasted for only 6 minutes and did not "unreasonably" extend the length of a stop beyond the time necessary to write a ticket and conduct ordinary inquiries incident to the stop." *Pillow v. City of Lawrenceburg*, 319 F. App'x 347, 350-351 (6th Cir. 2008) (dog sniff did not

unreasonably prolong the stop since a "good faith delay of at most a few minutes to get a citation form occurred). Based on the evidence before the Court, Defendant Nichols is entitled to qualified immunity.

Similarly, although for different reasons, Defendant Peabody is also entitled to qualified immunity.

Peabody's affidavit states he knew Plaintiff was recently released from prison after serving time for burglarizing homes in Springfield, Ohio, and that following his release, a number of homes had been burglarized in the city. He further states that because a warrant had been obtained to place a GPS tracker on Plaintiff's Chrysler 300, Peabody became aware during the early morning hours of June 15, 2017, that Plaintiff was in a "general area" where burglaries had recently occurred. Plaintiff does not dispute any of this testimony.[7] Additionally, the evidence before the Court is that no "seizure" occurred of Plaintiff on June 15, 2017, since Peabody was unable to stop Plaintiff because he fled in his Chrysler 300 with another passenger. *California v. Hodari D.*, 499 U.S. 621, 626-627 (1991) (holding that a seizure under the Fourth Amendment does not occur when a police officer orders a suspect to stop but the suspect successfully flees); *see also United States v. Ward*, 756 F. App'x 560, 568 (6th Cir. 2018) ("The Fourth Amendment protects against unreasonable seizures, not unreasonable attempted seizures.").

---

[7] Plaintiff disputes that he was not in the area of Warren Drive, Springfield, Ohio, during the early morning hours of June 15, 2017, only because he was not within "walking distance" of the general area. Doc. # 43, PageID#517.

Based on the evidence before the Court as set forth in Defendants' affidavits and the exhibits attached thereto, Nichols and Peabody each acted as a reasonable police officer in similar circumstances, *Bullman*, 787 Fed. App'x. at 296, and are entitled to qualified immunity. For these reasons, there is no genuine dispute of material fact that they are entitled to qualified immunity, since Defendants' Motion for Summary Judgment on the issue of qualified immunity, Doc. #38, is sustained as a matter of law.

### F.  Plaintiff Has No Claim for Violations Under the Fourth Amendment

Defendants' final argument in support of their Motion for Summary Judgment, Doc. #38, is that the uncontroverted evidence established that no Fourth Amendment violation exists.  Specifically, Nichols argues that pursuant to *Illinois v. Cabelles*, 543 U.S. 405, 409 (2005), his stop of Plaintiff was not a violation of the Fourth Amendment because the fresh air sniff by Gery, a trained narcotics detection dog, did not "implicate legitimate privacy" concerns. In *Cabelles*, the United States Supreme Court held that a dog sniff conducted during a ten-minute lawful traffic stop that resulted in the dog alerting outside the car due to narcotics inside was not a violation of the Fourth Amendment because there was sufficient probable cause for the resulting search.  Peabody argues that his June 15, 2017, encounter of Plaintiff did not result in a stop and thus, no seizure of him occurred. *California v. Hodari D.*, 499 U.S. at 626-627.  Additionally, this Defendant argues that based on the evidence before the Court, Plaintiff abandoned both his Chrysler

300 and his cell phone on June 15, 2017, so that no seizure occurred of his property. *United States v. Robinson*, 390 F.3d 853, 874-875 (6th Cir.) (abandoned property does not implicate the Fourth Amendment); *United States v. Foster*, 65 F. App'x 41, 46 (6th Cir. 2003) (suspect abandoned his vehicle and cell phone by fleeing from the scene of a traffic stop, extinguishing his expectation of privacy).

The evidence before the Court establishes that there was probable cause for Nichols' February 28, 2017, stop and the search by the police canine of Plaintiff's vehicle. Additionally, the evidence shows that on June 15, 2017, Plaintiff abandoned both his Chrysler 300 and cell phone and that a warrant was later obtained to search both items. Therefore, Peabody committed no Fourth Amendment violations.

Based on the uncontroverted evidence, the Court finds that there is no genuine dispute of material fact that Defendants Nichols and Peabody violated the Fourth Amendment. For these reasons, Defendants' Motion for Summary Judgment, Doc. #38, is sustained as a matter of law.

### V. Conclusion

For the reasons set forth above, the Court finds that there is no genuine dispute of material fact and that Defendants Deric Nichols and Brian Peabody are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment, Doc. #38, is SUSTAINED for the following reasons:

(1) As to Defendant Deric Nichols, Plaintiff's § 1983 claim asserting a violation of the Fourth Amendment is barred by the statute of limitations, Ohio Revised Code § 2305.10;

(2) As to Defendants Deric Nichols and Brian Peabody, Plaintiffs' § 1983 claims asserting a violation of the Fourth Amendment are barred pursuant to (a) *Heck v. Humphrey*, 512 U.S. 477(1994); (b) *res judicata*; (c) qualified immunity; and (d) lack of a Fourth Amendment violation.

Judgment is to enter in favor of Defendants, Deric Nichols and Brian Peabody, and against *pro se* Plaintiff, Ramon Boyce.

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: March 28, 2023

WALTER H. RICE
UNITED STATES DISTRICT JUDGE